Argued at Pendleton October 23; reversed November 9;
rehearing denied December 19, 1933

# PLATT *v.* JONES

(26 P. (2d) 554)

*P. J. Gallagher,* of Portland (Gallagher & Gallagher, of Portland, and Hallock, Donald & Banta, of Baker, on the brief), for appellants.

*C. W. Ellis,* of Burns (Robert D. Lytle, of Vale, on the brief), for respondent.

BAILEY, J. On May 31, 1933, the defendant, James Jones, also known as J. N. Jones, filed in the circuit court for Malheur county, Oregon, an application and petition for an order authorizing him to make, execute and deliver to the Regional Agricultural Credit Corporation of Spokane, Washington, a corporation, as mortgagee, a chattel mortgage for the principal sum of $24,800, which authorization and the mortgage executed pursuant thereto were also to cover "any further loans, advances or expenditures not exceeding the total principal sum of $45,000". On presentation of this application and petition an order was entered by said court authorizing him to execute and deliver such a mortgage to the mortgagee above named. From this order the plaintiffs and intervening plaintiffs appeal.

In order to pass upon the questions involved on this appeal it will be necessary to review the history of this case from its inception.

In October, 1930, F. J. Froman as administrator with the will annexed of the estate of Forrest Jones, deceased, and Bernice Platt, guardian of the estate of Marjorie Marie Jones and William Jefferson Jones, minor children of Forrest Jones, deceased, as plaintiffs instituted a suit against James Jones as defend-

ant to have said James Jones declared trustee for the use and benefit of the two heirs of Forrest Jones, deceased, above named, of one-half the residuary estate received by James Jones under the last will and testament of William Jones, deceased, father of James Jones and Forrest Jones.

Later, James Jones as executor of the last will and testament of William Jones, deceased, was made a defendant by intervention; and Nettie Duvall individually and as guardian of her daughter, Alice Annette Jones, intervened as plaintiffs.

The court in that proceeding found that William Jones died testate in June, 1928, and that in his last will James Jones was named executor and sole residuary legatee and devisee. This will was executed on October 25, 1927. The circuit court further found that on September 16, 1927, a contract was entered into between James Jones, party of the first part, and Forrest Jones, party of the second part, in which it was recited that said William Jones had executed his last will and testament which bequeathed and devised to James Jones a large part of the real and personal property belonging to the testator; that it was the actual intent of William Jones that the property devised and bequeathed to James Jones should be divided equally between James and Forrest Jones after the final determination of certain litigation then pending in the circuit court of Malheur county in which Bernice Jones was plaintiff and Forrest Jones was defendant, the same being a suit by Bernice Jones for a decree of divorce against Forrest Jones; and that said will had been executed by William Jones with full and complete knowledge of said suit.

After reciting the foregoing "whereas" clauses the said contract provided that it was agreed between the

parties thereto, James Jones and Forrest Jones, in consideration of one dollar paid by Forrest Jones, and brotherly relationship, that "upon the death of the said William Jones, notwithstanding any clause which may be contained in the last will and testament, that all property, both real, personal and mixed, which may be or may have been devised and bequeathed to the said first party, shall actually be the property of the first and second parties jointly and that upon the final termination of the suit now pending in the circuit court of Malheur county, Oregon, hereinbefore mentioned, that the said first party shall assign unto the second party an undivided one-half interest in each and all of the said real, personal or mixed property which may be bequeathed or devised by the last will and testament of the said William Jones to the said first party, or to make such division equally between the parties hereto as may be mutually agreeable to the parties to this instrument".

Based upon the foregoing contract and other evidence in the case, the circuit court found and decreed James Jones, individually, and James Jones, as executor of the William Jones estate, defendant by intervention, to be trustees of said residuary estate for the use and benefit of the estate of Forrest Jones, deceased, and as such trustee charged with one-half interest in and to all the residue of the estate of William Jones, deceased, and ordered said James Jones individually and as such executor to account for said residue to F. J. Froman as administrator with the will annexed of the estate of Forrest Jones, deceased, for the benefit of said estate, and to the above named minor children of Forrest Jones.

From that decree an appeal to this court was attempted by James Jones individually and as executor,

and upon motion of the plaintiffs to dismiss such attempted appeal on the ground that the order or decree appealed from was not a final decree, this court, in *Froman et al. v. Jones et al.*, 141 Or. 42 (16 P. (2d) 21), held that the decree attempted to be appealed from was interlocutory and not final, and dismissed the appeal.

In the early part of December, 1929, a decree of divorce was granted to Bernice Jones in her suit against Forrest Jones, and on March 14, 1930, Forrest Jones died testate, leaving as beneficiaries of his will his two minor children. In July, 1931, some nine months after this suit was instituted to have James Jones individually and as executor of his father's estate declared trustees of one-half of the residue of said estate, the estate of William Jones, deceased, of which James Jones was executor, was closed.

Since the former attempted appeal in this suit, Bernice Platt, formerly Bernice Jones, as administratrix *de bonis non* of the estate of Forrest Jones, deceased, was substituted for F. J. Froman, administrator with the will annexed of the said estate.

In his application and petition for permission to execute a mortgage to the Regional Agricultural Credit Corporation the said James Jones refers to the termination of the divorce suit in December, 1929, the death of Forrest Jones in March, 1930, the institution of this suit in October of that year, the closing of the William Jones estate in July, 1931, and the decree of the circuit court declaring that James Jones held one-half of the residue of the estate of William Jones, deceased, as trustee.

Proceeding with a recital relating to the estate of William Jones, deceased, the indebtedness created by Forrest Jones individually, and other matters, the peti-

tion for authorization to execute a mortgage refers to various items of personal property belonging to the estate of William Jones, deceased, and the appraised value of certain items in said estate, which recital seems to have no connection with the purpose of the petition, since it is not stated therein what disposition was made of many of the items of personal property so listed.

In the petition it is stated that at the death of William Jones there was a mortgage on the Jonesboro ranch given by Forrest Jones in favor of the Federal Land Bank in Spokane, Washington, for $6,500, the principal of which at the time of William Jones's death amounted to $6,252.84, plus accrued interest; that this property was by Forrest Jones deeded to James Jones; and that the petitioner intends to pay said mortgage from the refinancing of the principal indebtedness, in the event the court grants permission to him to execute the mortgage. The Jonesboro ranch, as we understand the findings of the court, was deeded by Forrest Jones and his wife to James Jones as security for a loan made by James Jones to them. It was not, so far as we have been able to ascertain from the record, a part of the estate of William Jones, deceased.

The petition sets out numerous other items of indebtedness incurred by Forrest Jones during his lifetime, the exact amount of which we have been unable to determine from that document, but which, we understood from the oral arguments, amounted originally to around $30,000, and of which amount approximately $20,000 is intended to be covered by or included in the proposed mortgage. Among such items are a note for $4,700 dated July 1, 1929, to the Ontario National Bank, and another one for $8,000 dated July 13, 1929, to the same bank. These two notes were signed by

Jones and McCabe, by Forrest Jones. After procuring the loans such notes represented, Forrest Jones was, according to the petition, unable to obtain more credit from the said bank until James Jones had guaranteed the payment of any further loans made to him. Upon the guaranty of James Jones, Forrest Jones on November 22, 1929, procured from that bank $2,500; on February 22, 1930, $3,600, and later two other loans of $500 each.

Beginning in February, 1929, and continuing through December of that year, Forrest Jones gave five notes to James Jones as executor of the estate of William Jones, deceased, for an aggregate of $2,300.

It is recited in the petition that James Jones at the direction of Forrest Jones, during the latter's illness, on February 4, 1930, signed the name of Forrest Jones to two notes to the First Bank of Juntura, for $1,000 and $6,000, and on the same date Forrest Jones gave his note to James Jones and Dan Gallagher for $2,800, which was negotiated with the First Bank of Juntura.

The petition states that under his guaranty to the Ontario National Bank James Jones has paid all the notes that he obligated himself to pay for Forrest Jones, and that the two notes to the First Bank of Juntura have not been paid in full but the $6,000 note has been reduced to $4,000 and the $2,800 note to $1,300. It is further stated that the notes given by Forrest Jones to the executor of the estate of William Jones, deceased, have not been paid, and that "all of said moneys paid on account of the said notes [which, apparently, would include the notes to the Ontario National Bank and to the First Bank of Juntura] were paid from funds of said estate and constitute a part of the indebtedness which this court is asked to authorize the refinancing of" by the petitioner.

The petition goes on to state that the last will of William Jones, deceased, bequeathed specific legacies to Mary Jones, widow, and to Ben Jones, aggregating $6,000, "and said obligations were paid in full, which payments constitute a part of the debt to be refinanced". It is also recited that the executor paid an inheritance tax of $2,570 to the state of Oregon and a federal estate tax of $251.30, and has paid taxes on the real and personal property up to and including the first half of the 1930 taxes, "and that the money for the purpose of paying the taxes up to date will have to be derived from the refinancing herein petitioned for" by the applicant.

Further recitals in the petition are to the effect that at the present time said James Jones on account of said residuary property and estate is indebted to the Bank of Malheur in the approximate principal sum of $2,400; that at the time of his appointment as executor he had personal assets of substantially $5,000 which he used for the benefit of the estate of William Jones, deceased; that he was vice-president of the First Bank of Juntura and in order to protect certain notes (not identifying them) and, for the purpose of maintaining necessary accommodations to customers of the bank with the object of protecting certain debts due the said bank, it became necessary for him to open up a line of credit with the First National Bank of Idaho, which bank required of him collateral security on account of advances made and to be made by it; that therefore he executed a mortgage of $25,000 on all the real estate of the William Jones estate; and that there was possibly conditional liability of $4,000 on said $25,000 note which would have to be paid.

The petition further states that on the date of the filing of the petition, to wit, May 31, 1933, the peti-

tioner "in connection with the property coming into his name from said residuary estate and on account of the various transactions hereinbefore stated", was indebted to the Loan Company of Idaho in the sum of approximately $34,119.56 on two notes, one of $31,500 dated March 12, 1932, the principal of which had been reduced to $27,570.78, and another note originally for $11,000 dated June 3, 1932, with present balance of $6,548.78 thereon due.

The last paragraph of the petition is as follows:

"Your petitioner, as he must in equity, will abide by the orders of the court, but in this petition as to each and every allegation herein seemingly admitting the, or any, trust alleged by plaintiffs or intervening plaintiff, petitioner says that he believes on the final determination of this cause no trust will be found or decreed and that said seeming admissions are not to be construed as a waiver of his contention of individual ownership and title or as estopping him from appealing from any decision of the circuit court or as a waiver of any legal or equitable rights, including the statutory right of appeal."

Attached to the petition is a copy of the mortgage which petitioner requests authorization to deliver to the Regional Agricultural Credit Corporation. This instrument is dated January 23, 1933, although the petition was not filed until May 31, 1933. The mortgage is to be given to secure a note for $24,800 dated January 23, 1933, and due December 30, 1933, and to cover any additional advances that may be made by the mortgagee to the mortgagor not exceeding the total principal sum of $45,000. The mortgage itself covers hay, grain and livestock such as cattle, sheep, horses and mules.

According to the statement of counsel for the petitioner, $40,000 is necessary to refinance what he terms

the indebtedness of the trust estate, but of this amount $20,000 is a personal indebtedness created by Forrest Jones. There is nothing definite in the petition to indicate how much of this $40,000, if any, was actual indebtedness incurred by the petitioner in administering the trust estate. From the petition one would infer that some of the indebtedness which was sought to be discharged was indebtedness created in the administration of the estate of William Jones, deceased, such as the $5,000 which petitioner states that he individually had advanced to that estate. Also, we infer from the petition that the $6,000 paid in specific legacies was to be taken care of by the refinancing. Just why the indebtedness of the William Jones estate was not paid before that estate was closed is not explained.

The decree declaring James Jones trustee was entered on July 8, 1932, and the appeal therefrom was dismissed by this court on November 22 of the same year. This decree also required James Jones to render an account of the trust property, but to date no such account has been rendered. Until such accounting is made it is difficult to ascertain how much, if at all, said trust estate is indebted to James Jones or to any one else.

According to the petition and the statement of counsel, $20,000 of the $40,000 was a personal indebtedness of Forrest Jones and was not in any way incurred by the petitioner in the administration of the trust estate. It would therefore seem that the items making up this amount should be presented to the administratrix *de bonis non* of the estate of Forrest Jones, in the same manner that other claims are presented. The record before us does not disclose the amount of claims, if any, other than the James Jones

claims, against the estate of Forrest Jones, deceased. If there be other charges against that estate, James Jones is not entitled to make what appears to be merely a personal indebtedness to him from Forrest Jones a preferred claim and receive payment thereof in full by the means which he now seeks.

The decree of the circuit court establishing a trust was not final, *Froman et al. v. Jones et al.,* supra, and therefore it is not certain that upon the final determination of the case the decree will be upheld. The petitioner, while asking the aid of the court, most decidedly contends that no trust was ever created, and attempts to preserve his rights relative to further proceedings in regard thereto and to an appeal. We can not on this appeal determine the question of whether or not there is a trust, because this appeal does not involve that question. How, then, are we to decide whether or not the circuit court erred in authorizing James Jones to execute this mortgage? All that we can do is to determine the authority of the trustee under the trust as decreed by the circuit court. In doing this we may be, to some extent, deciding a moot question, but due to the insistence of counsel for all the parties that we advise them as to their rights on the assumption that the trust is as decreed by the circuit court, we have considered the extent of authority of the circuit court, based on such a trust, to authorize James Jones to encumber the trust property by the execution of the proposed mortgage.

All the residue of the estate of William Jones, deceased, was devised and bequeathed to James Jones on the condition that he would, upon the termination of the divorce proceedings brought by Bernice Jones

against Forrest Jones, assign and convey one-half thereof to his brother, Forrest Jones. Forrest Jones died about a year and a half before the William Jones estate was closed. During that time James Jones as executor of his father's estate had possession and control of the personal property of the estate. Immediately upon the close of the estate it was his duty, either as executor or as trustee, to deliver one-half the residue of the personal property in that estate to the administrator with the will annexed of the estate of Forrest Jones, deceased, and as trustee to deed one-half the remaining real property to whosoever was entitled to it under the will of Forrest Jones, deceased.

The trust, as decreed by the circuit court, was limited in duration to the determination of the divorce proceedings. The final decree in that suit was entered on December 2, 1929. The record before us does not disclose that any of the indebtedness which is now attempted to be refinanced was incurred by James Jones in carrying out the provisions of the trust before that date, or prior to the institution of this suit to have the trust established. Nor can it be determined from the record before us, with any definiteness or certainty, how much of the indebtedness that is sought to be refinanced by this proceeding is properly chargeable to the trust estate, or when or in what manner it was incurred. It is true that petitioner seeks a loan to repay himself for moneys which he advanced to or on behalf of Forrest Jones, and for other indebtedness incurred by Forrest Jones before the final decree in the divorce suit, but none of such items of debt appeared in any way connected with the administration of the trust. Even if the court had power, under the terms of the trust, to permit the trustee to encumber

the trust property with a mortgage, it would not be authorized to permit him to reimburse himself for money which he had personally advanced to or for the *cestuie que trust* not expressly or impliedly within the terms of the trust.

Whatever power an equity court might have before the termination of the trust to authorize the execution of a mortgage by the trustee to effectuate the trust is not here in question, since the trust was to end immediately upon the final disposition of the divorce suit, and up to that time there was, according to the record before us, no necessity of borrowing money. Had the estate of William Jones been fully administered and the residue thereof delivered to James Jones prior to the final decree in the divorce suit, then the said James Jones would have been charged with the duty of preserving the trust estate during that interval under an agreement which contained no powers or limitations, and, during said time, the court might have permitted the trustee to mortgage the property to preserve the same, if it became necessary to do so in order to carry out the purpose of the trust.

In the case at bar no necessity existed, had the trustee performed his duty, for him to mortgage the trust property in order to preserve the same or to carry out the terms of his trust. The necessity at the present time, if any exists, to refinance the indebtedness of the trust estate, was created by the trustee's repudiation of his obligations rather than by his compliance with the terms of the trust.

The trustee in the administration of a trust estate generally is limited by the instrument creating the trust. If such instrument, however, contains no powers or limitations, but the purpose and intention of the trustor in creating the trust can be ascertained, the

courts will lend their aid by permitting the trustee to do whatever is necessary to preserve the estate and carry out the intention of the creator of the trust. Sometimes the courts will permit the trustee to do things which are seemingly in conflict with the express terms and conditions of the trust, if it becomes necessary to do so in order to preserve the trust and to effectuate the purpose of the trust.

In the case at bar William Jones, by devising and bequeathing all the residue of his real and personal property to his son James on the express agreement of James that only one-half thereof would be retained by himself and the other half would be handed over to his brother Forrest, and that James would, upon the happening of a certain event, assign and transfer to his brother one-half of the property so devised and bequeathed to himself, created a secret trust, the duration of which was definitely fixed.` Although the powers of the trustee during the continuance of the trust were not designated in the agreement between James Jones and his brother Forrest, nevertheless the duration of the trust was definitely specified, and unless something occurred before the time when the trust was to end necessitating the extension of the trust in order to accomplish the objects sought by the trustor, there would be no good or lawful reason for extending the duration of the trustee's authority over the trust estate. The record before us fails to disclose any reason why the trust should be extended beyond the time specified for its termination.

The estate of William Jones, as already pointed out, was not closed until approximately one and one-half years after the divorce proceedings ended. Much of the indebtedness contracted during that period, which is sought to be refinanced, was incurred by the

executor of the estate, or by James Jones, individually and not as trustee, or by Forrest Jones. There appears no good reason why the executor of the estate of William Jones, deceased, instead of the trustee, should not have had possession and control of the personal property of the estate until such time as the executor was discharged and the estate closed. Any indebtedness properly incurred by the executor in the administration of the decedent's estate should have been paid out of that estate or refinanced before the estate was closed.

The order of the circuit court permitting James Jones to mortgage the personal property of the trust estate, under the facts as here presented, exceeded the power of a court of equity. The decree appealed from is reversed.

BEAN and KELLY, JJ., not sitting.